[Civ. No. 31808. Second Dist., Div. One. Dec. 14, 1967.]

THE STATE OF CALIFORNIA ex rel. STATE PUBLIC WORKS BOARD, Plaintiff and Respondent, v. CITY OF LOS ANGELES, Defendant and Appellant.

Roger Arnebergh, City Attorney, Bourke Jones and Peyton H. Moore, Jr., Assistant City Attorneys, and Norman L. Roberts, Deputy City Attorney, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Willard A. Shank, Assistant Attorney General, N. B. Peek and Robert H. Francis, Deputy Attorneys General, for Plaintiff and Respondent.

WOOD, P. J.—In this eminent domain proceeding, the State of California, acting through the State Public Works Board pursuant to the Property Acquisition Law (Gov. Code, § 15850, et seq.), seeks to acquire by comdemnation real property which is owned by the City of Los Angeles and used for park purposes. The board seeks to acquire the property for use by the Sixth District Agricultural Association (now known as the California Museum of Science and Industry [Stats. 1967, ch. 15; Agr. Code, § 4101]) as a parking lot for the museum. The city appeals from the judgment in favor of the state.

Appellant contends that the condemnation of the property by the state (board) was not authorized by the Legislature, and that without such authorization the state cannot condemn property used by the city for park purposes.

The Property Acquisition Law is set forth in title 2, division 3, part 11, of the Government Code (§ 15850 et seq.).[1]

Section 15853 provides in part that the board shall select and acquire, in the name and on behalf of the state, suitable and adequate real property for such purposes as may be speci-

[1]Some of the sections were amended in 1963. The complaint was filed in 1962 and the trial was in 1967. The 1963 amendments have no material bearing on the issues in the present case.

fied in the legislation making funds available for such acquisition.

Section 15854 provides for the condemnation of property by the board, and section 15855 provides that, before commencing comdemnation proceedings, the board shall adopt a resolution declaring that public interest and necessity require the acquisition. Section 15855 provides further that the resolution shall be conclusive evidence (a) of the public necessity of the proposed public improvement, (b) that the real property or interest therein is necessary for the improvement, and (c) that the improvement is planned or located in a manner which will be compatible with the greatest public good and the least private injury.

Section 15856 provides as follows: "In any condemnation proceeding brought for the acquisition of real property pursuant to this part, the use for which the property is condemned shall be deemed a public use more necessary than any other public use to which the property is devoted at the time the action is commenced."

In the Budget Act of 1956 (Stats. 1957, ch. 1, pp. 3, 77) the Legislature's appropriations included an appropriation (Item 361.1) as follows: "For acquisition and improvements of real property, Sixth District Agricultural Association, Fairs and Expositions Division, Department of Finance, to be expended under the provision of the Property Acquisition Law, payable from the State Park Fund . . . [$]1,666,667. . . ." Thereafter, the board[2] passed a resolution pursuant to section 15855, declaring that the public interest and necessity require the acquisition of the property in question. There are findings, supported by evidence, that the resolution complied with the provisions of said section. There is no dispute that the city was using the property for park purposes, and it was stipulated that the fair market value of the property is $142,000. Appellant states in its brief that there appears to be no factual dispute involved in this appeal.

 Appellant (city) contends that condemnation of the property by the board was not authorized by the Legislature, and that without such authorization the board cannot comdemn property used by the city for park purposes. It asserts that "such authorization has not been given by the Legisla-

---

[2]The board consists of the Director of Finance, the Director of Public Works, the Director of General Services, two members of the Senate, and two members of the Assembly (Gov. Code, § 15770).

ture, either in the Property Acquisition Law or in Budget Item 361.1''—that the Legislature did not designate the particular parcels of real property which were to be condemned, and did not designate the particular purpose for which the parcels were to be used.

In support of its contentions, appellant cites *Department of Public Works & Buildings* v. *Ellis* (1962) 23 Ill.2d 619 [179 N.E.2d 679], to the effect that a ''general grant of the power of eminent domain does not authorize the condemnation of property already devoted to a public use.''

In *Ellis,* it was held that the Legislature had not granted a state agency the authority to condemn school district property.

In the determination of the question whether or not property already devoted to a public use can be subjected to the process of eminent domain the primary factor to be considered is the character of the condemnor. ''If the sovereign, such as the state or the United States on its own behalf and for its own sovereign purposes, seeks to acquire such property [i.e., property already devoted to a public purpose] by eminent domain, the character of the '*res*' as public property, generally, has no inhibiting influence upon the exercise of the power.'' (*Barry* v. *Department of Public Works,* 199 Cal. App.2d 359, 362 [18 Cal.Rptr. 637], quoting [except brackets] from 1 Nichols, Eminent Domain [rev. 3d ed. 1964], § 2.2, p. 203.) ''If, on the other hand, a condemnor to whom the power of eminent domain has been delegated, such as a municipality or a private corporation, seeks to exercise the power with respect to property already devoted to a public use, the general rule is that . . . the exercise of the power will be denied unless the Legislature has authorized the acquisition either expressly or by necessary implication.'' (1 Nichols, Eminent Domain, *supra,* § 2.2, p. 205; see 29A C.J.S., Eminent Domain, § 74, pp. 326-328; 26 Am.Jur.2d, Eminent Domain, § 74, p. 734; cf. *People* v. *City of Los Angeles,* 179 Cal.App.2d 558, 564 [4 Cal.Rptr. 531], wherein it was held that the state, acting through the Department of Public Works, had authority to condemn city park property.) It has also been said that ''Property already appropriated to a public use may be taken only for a more necessary public use.'' (Condemnation Practice (Cont.Ed.Bar) § 8.14, p. 142; see Code Civ. Proc., §§ 1240, subd. 3, and 1241, subd. 3; *People* v. *City of Los Angeles, supra,* p. 564.)

In the present case, as above shown, the Legislature, in the Property Acquisition Law, authorized the board, "in the name and on behalf of the state," to select and acquire suitable real property for such purposes as may be specified in the legislation making funds available for such acquisition; and authorized the board to condemn property as a means of effecting the acquisition. The Legislature also provided that acquisition under the Property Acquisition Law shall be deemed a public use more necessary than any other public use to which the property is devoted when the condemnation proceedings are commenced. In the budget, the Legislature made funds available for acquisition of real property for the Sixth District Agricultural Association, Fairs and Expositions Division (California Museum of Science and Industry) to be expended under the provision of the Property Acquisition Law; and the court found (and there is no dispute on appeal) that the board passed the resolution and complied with the procedures set forth in the Property Acquisition Law for the condemnation of the property.

It thus appears that the state sought acquisition of the property "on its own behalf and for its own sovereign purposes"—the Property Acquisition Law authorized the board to acquire property in the name and on behalf of the state. The Legislature, in addition to granting eminent domain power to the board under the Property Acquisition Law, directed in the budget that the funds appropriated be expended pursuant to the Property Acquisition Law for the acquisition of real property for use by the Fairs and Expositions Division of the Sixth District Agricultural Association. The necessary implication in the provisions of the Property Acquisition Law, and in the provisions of the budget, is that the Legislature conferred authority on the board to acquire the real property herein for the Sixth District Agricultural Association (California Museum of Science and Industry). It was not a legal requirement that the Legislature designate the particular parcel of real property to be acquired. There is no merit to appellant's assertion that the Legislature's specification of the purpose for the acquisition (for use by Sixth District Agricultural Association, Fairs and Expositions Division) should have been set forth with more particularity. The board had authority to condemn the property in the name and on behalf of the state.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied January 9, 1968, and appellant's petition for a hearing by the Supreme Court was denied February 21, 1968. Mosk, J., did not participate therein.