FOURTH DIVISION

December 29, 2005

No. 1-05-0321

JOSEPH DOMBROWKSI, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

v. )

) No. 04 M1 450591

THE CITY OF CHICAGO, a Municipal Corporation, THE )

DEPARTMENT OF ADMINISTRATIVE HEARINGS, and )

THE DEPARTMENT OF BUILDINGS, ) The Honorable

) Sandra Tristano,

Defendants-Appellees. ) Judge Presiding.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff Joseph Dombrowski owns the building located at 1331-41 West Addison Street (the Building), which a City of Chicago (the City) building inspector observed and alleged violated the Chicago Building Code, specifically section 13-196-530(b), which requires that building exteriors be free of holes, cracks, or other openings that might admit water into a building’s interior.  Chicago Municipal Code ྷ 13-196-530(b) (1990).  At trial, at which only plaintiff testified, an administrative law judge (ALJ) found plaintiff liable and imposed a fine of $500.  On administrative review to the circuit court of Cook County, the ALJ’s judgment was affirmed.  Plaintiff now appeals.

 On May 11, 2004, the City issued plaintiff and his management company a notice of violation and summons, advising plaintiff of alleged violations of sections 13-196-530(b), 13-196-570, and 13-12-100 of the Building Code (Chicago Municipal Code ྷྷ 13-196-530(b), 13-196-570, and 13-12-100) (1990, 1990, and 2005, respectively)), specifically that there were cracks and other openings between bricks and mortar joints in the Building’s west and north walls, that the Building’s porch had broken and missing pickets, and that plaintiff failed to arrange entry for the inspector into the Building’s interior, all observed on March 12, 2004.  The notice advised plaintiff that the City would conduct a hearing on May 28, 2004, and that he would be required to present all evidence as to the nonexistence or correction of the alleged violations at the hearing.  Plaintiff appeared at the hearing 
pro se
 and was found not liable on the final count.  The ALJ continued proceedings as to the remaining violations to June 25, 2004, and set a reinspection date of June 18, 2004, to allow plaintiff to correct the alleged violations.

A City inspector observed the Building again on June 18, 2004, and noted that the previously alleged defects had not been corrected.

At the June 25, 2004, hearing, at which plaintiff again appeared 
pro se
, the ALJ and plaintiff discussed the alleged violation of section 13-196-530(b), in which the City contended that the Building’s west wall had "wash[ed] out mortar” and "loose brick” between the second and third elevation and "loose brick” and "washout mortar joint” on the third floor, and that the north wall had "washout mortar joint[s]” at each elevation.  The ALJ stated that the City had established a 
prima facie 
case for liability through its first and second inspection reports.  Plaintiff responded that he had visually observed the allegedly violative conditions and measured the openings in the mortar, which, he stated did "not exceed or go into the second course of brick.”

The ALJ explained that, in order to resolve the case, he had to weigh plaintiff’s evidence against the City’s, which was the sworn statements by its inspectors as to the Building’s conditions, and that plaintiff had failed to rebut the City’s case.  Plaintiff responded that, while the City alleged that the Building’s exterior was in such a condition as to admit water into its interior, there was no allegation that it had in fact caused moisture to infiltrate the outer walls.  The ALJ nonetheless found that the City’s allegation was sufficient to state a Code violation and found plaintiff liable on that count.

The ALJ found plaintiff not liable on the charge of violating section 13-196-570, based on the fact that the City had alleged the same violation in July 2003 but never pressed a suit against plaintiff.  The ALJ imposed a fine of $500 plus $25 in costs on the count of violating section 13-196-530(b).  

Plaintiff filed a complaint for administrative review 
pro se
, alleging that the records of his hearings were incomplete and prevented him from proceeding without prejudice, that the ALJ made his finding of liability based solely on the City inspector’s March 2004 report, that the inspector’s report did not allege that the Building’s exterior condition allowed water to enter its interior, that the ALJ found liability without evidence of water being admitted to the Building’s interior, and that the ALJ provided no basis or aggravating factors for imposing the maximum fine.

According to a bystander’s report, plaintiff appeared 
pro se 
at the administrative review and argued that the incomplete record of the proceedings before the ALJ prevented a full and fair review by the trial court.  The City countered that the unrecorded and inaudible portions of the hearings were not problematic because the circuit court would be able to comprehend the basis of the proceedings.  The circuit court determined that the record was sufficient to allow for an adequate review of the ALJ’s decision.

Plaintiff next argued the ALJ improperly interpreted the Building Code by finding a violation of section 13-196-530(b) without proof of actual water infiltration and that the evidence he presented at the prior hearings established that the Building’s condition did not violate that provision of the Building Code.  The City countered that the language of the Building Code does not require proof of actual water infiltration and that the ALJ’s decision was not against the manifest weight of the evidence.

The trial court determined that the ALJ had not misinterpreted the Building Code and that the fine imposed was not unconstitutional or unsupported by the record.  Plaintiff, with counsel, now appeals.

Plaintiff first contends that he was deprived of his due process right to a full and fair administrative hearing where he was not allowed to cross-examine the only evidence presented against him, and that the ALJ improperly granted more weight to the City inspector’s reports than to his own testimony.  He argues that, because the City inspector who alleged the Building Code violations was unavailable to testify at the hearing, plaintiff was denied the opportunity to challenge the inspector’s qualifications, methods, and conclusions through cross-examination.  Plaintiff also challenges section 13-196-530(b) of the Building Code as unconstitutionally vague.

Defendants counter that plaintiff has waived the preceding constitutional arguments on appeal because he failed to raise them either during the administrative hearing or on administrative review in the circuit court.  They rely on the rule that constitutional issues not raised before an administrative agency and only presented for the first time on appeal to this court are waived.  
Texaco-Cities Service Pipeline Co. v. McGaw
, 182 Ill. 2d 262 (1998); 
Connor v. City of Chicago
, 354 Ill. App. 3d 381 (2004).  Defendants point out that plaintiff never questioned the validity of section 13-196-530(b), complained of the ALJ’s apparent favor for the City inspector’s statement, or asked that the inspector be made available at any time prior to this appeal and thereby created the very problem of which he now complains.  Defendants further argue that plaintiff’s failure to raise these issues prior to now deprives this court of a full record on which to assess his claims and that original jurisdiction over the constitutionality of a given piece of legislation lies with the circuit court.

Plaintiff presents no real rebuttal to defendants’ claim of waiver, but responds only that, even if his constitutional arguments are waived, this court should nevertheless consider and resolve them because they "go to the heart of the administrative hearing process” in the form of a party’s due process right to a full, fair, and impartial hearing.  Plaintiff argues that this court ought to consider the due process claims as constitutional issues of significant importance, notwithstanding waiver, in order to achieve a just result, in accordance with the holdings of 
El Sauz, Inc. v. Daley
, 328 Ill. App. 3d 508 (2002), 
Catholic Charities v. Thorpe
, 318 Ill. App. 3d 304 (2000), and 
Daniels v. Industrial Comm’n
, 201 Ill. 2d 160 (2002).  

We believe there ought to be some consideration for the fact that plaintiff appeared  
pro se 
at both the administrative hearings and on review to the circuit court, and may not have been aware of any potential constitutional violations that could have occurred at either stage.  However
, a party’s 
pro se 
status does not relieve him or her of the burden of complying with procedural rules.  See 
Twardowski v. Holiday Hospitality Franchising, Inc.
, 321 Ill. App. 3d 509, 511 (2001). 

In general, an appellant cannot raise a constitutional issue for the first time on appeal to this court where the lower court has not had an opportunity to consider it.  See 
Village of Lake Villa v. Stokovich
, 211 Ill. 2d 106, 118-19 (2004).  While administrative agencies do not have the judicial authority to determine the constitutionality of the legislation they are charged with enforcing (see 
Yellow Cab Co. v. City of Chicago
, 938 F. Supp. 500 (N.D. Ill. 1996)), it is generally required that a litigant raise any challenges to a statute’s validity at the administrative hearing and on review to the circuit court, lest the challenge be waived for purposes of appellate review.  See 
Caauwe v. Police Pension Board
, 216 Ill. App. 3d 313 (1991); 
Miller v. Police Board
, 38 Ill. App. 3d 894 (1976).  However, waiver serves mainly as an admonition to litigants and does not curtail the jurisdiction of a reviewing court.  
Hunt v. Daley
, 286 Ill. App. 3d 766, 771 (1997).  

Because plaintiff’s contentions on review concern the propriety of the conduct of his administrative hearing and subsequent review to the circuit court, and because plaintiff had been 
pro se 
up to this point, waiver seems an inappropriate restriction on this court’s consideration of his arguments. Accordingly, we will consider the merits of plaintiff’s arguments on appeal.

Plaintiff initially contends that he was deprived of his due process right to a full and fair administrative hearing where he was not allowed to cross-examine the only evidence presented against him.  He argues that, because the City inspector who alleged the Building Code violations was unavailable to testify at the hearing, plaintiff was denied the opportunity to challenge the inspector’s qualifications, methods, and conclusions through cross-examination.

Plaintiff cites to 
Balmoral Racing Club, Inc. v. Illinois Racing Board
, 151 Ill. 2d 367 (1992), and 
Scott v. Department of Commerce & Community Affairs
, 84 Ill. 2d 42 (1981), for the proposition that parties to an administrative proceeding are entitled to due process protections and that an administrative agency’s refusal to allow cross-examination amounts to a denial of a party’s due process rights.

Defendants counter that plaintiff was not denied due process in this instance because he never asked the ALJ to subpoena the inspector who had issued the violation notice or otherwise attempt to secure his presence and testimony at the hearing.  They argue that the notice and summons issued to plaintiff indicated that the proceedings would be governed by the City’s procedural rules and regulations of the department of administrative hearings, which were publicly available, and that the notice included procedures for acquiring copies of said rules and regulations.  Defendants point out that plaintiff could have requested the ALJ to make the inspector available pursuant to section 2-14-076(j) of the Municipal Code (Chicago Municipal Code ྷ 2-14-076(j) (2004)), which he did not do.  Defendants argue that plaintiff’s failure to consult and invoke a rule he had every right to invoke does not amount to a deprivation of due process.

Due process requires a fair trial before a fair tribunal and applies to both courts and administrative agencies performing adjudicatory functions.  
Arvia v. Madigan
, 209 Ill. 2d 520, 540 (2004).  This court has a duty to examine the procedural methods employed at an administrative hearing to ensure that it was a fair and impartial hearing.  
Anderson v. Human Rights Comm’n
, 314 Ill. App. 3d 35, 41 (2000).  Due process also requires that all parties have an opportunity to cross-examine witnesses and offer rebuttal evidence.  
Anderson
, 314 Ill. App. 3d at 41.  This court may not interfere with an administrative body’s discretionary authority unless that authority is exercised in an arbitrary or capricious manner or its decision is against the manifest weight of the evidence.  
Anderson
, 314 Ill. App. 3d at 41.

Defendants are correct in their assertion that plaintiff was apprized of the procedural rules and regulations of the City’s department of administrative hearings, which were publicly available through the City’s website, and therefore plaintiff knew or should have known of Rule 6.4, which elucidates an ALJ’s subpoena power.  They also emphasize the fact that plaintiff was made aware that the ALJ planned to issue his decision based upon the inspector’s written reports as balanced against plaintiff’s in-court statements, and that plaintiff had the option of requesting that the inspector be made available for cross-examination and having the ALJ issue his decision afterward.  Defendants argue that had plaintiff made such a request and the ALJ denied it, he might have had a more coherent claim for abuse of discretion and denial of due process, but since his right to cross-examination was never asserted and therefore never denied, he cannot now seek review based on any such deprivation.

On a related note, plaintiff also contends that the ALJ abused his discretion by not requiring that the inspector be present for the hearing, where plaintiff testified as to his own observations and measurements of the conditions that allegedly violated the Building Code.  He argues that the ALJ provided no basis for accepting the inspector’s statement as unrebutted evidence of liability and that it was unclear why the ALJ did not require the inspector’s presence when he indicated that he was required to weigh opposing testimony in order to resolve the case, and that the inspector’s testimony was required in order to establish what specifically constituted washed out mortar and loose brick.

Defendants respond that plaintiff’s argument is unfounded because plaintiff never requested that the inspector appear and therefore that the ALJ’s discretion to compel his appearance was never triggered.  Defendants again cite to section 2-14-076(j) of the Municipal Code, which states that an ALJ may, upon a party’s timely request, make available for cross-examination any person whose testimony is material and would not be cumulative.  Chicago Municipal Code ྷ 2-14-076(j) (2004).  They argue that, because plaintiff never requested that the ALJ make the inspector available, there was no discretionary power for the ALJ to abuse.

We agree with defendants.

The City conducts administrative adjudications of Building Code violations pursuant to the Illinois Municipal Code (65 ILCS 5/1-2.1-1 
et seq
. (West 2004)).  The Seventh Circuit has held that, in proceedings such as these, "live testimony and cross-examination might be so important as to be required by due process” and that the subpoena mechanism contained in Rule 6.4 provides parties with the opportunity to cross-examine complaining witnesses and therefore functions as a "safety valve for those cases *** in which fair consideration of the respondent’s defense would require, as a constitutional imperative, the recognition of a right of confrontation.”  
Van Harken v. City of Chicago
, 103 F.3d 1346, 1352 (7th Cir. 1997).  The Seventh Circuit has also held that the City presenting its evidence of violations in the form of written reports is not violative of due process because respondents have the opportunity to cross-examine the reports’ authors and cannot be deprived of a right they fail to exercise.  See 
United States v. Atkin
, 29 F.3d 267, 269 (7th Cir. 1994). 

In a case similar to this one, the Northern District held that administrative procedures allowing a building inspector’s affidavit to be admitted as evidence did not violate the right of confrontation, either on their face or as applied.  
Prudent Properties v. City of Chicago
, No. 99 C 6840 (N.D. Ill. 2000).  In that case, the City alleged that a building owner had violated portions of the Building Code and presented as evidence an inspector’s affidavit to that effect.  The owner’s counsel asked the hearing officer for an opportunity to cross-examine the inspector.  The hearing officer denied the request and found the owner liable.  The owner sought review in federal court, contending that the hearing violated due process because he was not notified of the City’s intent to present its case in the form of a written affidavit and because it required higher evidentiary standards for respondents than it did for the City.  The City filed a motion to dismiss for failure to state a claim.

The court held that the hearing did not violate the owner’s right to due process because the owner was aware of the rules that would govern the proceeding – one of which was Rule 6.2, which provides that parties may file prehearing motions to request discovery or subpoenas from a hearing officer – and because the owner was free to pursue a claim as to the hearing officer’s denial as an abuse of discretion on administrative review to the circuit court.  
Prudent Properties
, slip op. at 5, 6.  The court granted the City’s motion to dismiss and remanded the cause to the circuit court, finding no basis for reviewing the owner’s federal constitutional claims.  
Prudent Properties
, slip op. at 8.

As to plaintiff’s contention that the ALJ abused his discretion by not compelling the inspector’s appearance, we agree with the reasoning of defendants and the holding in 
Atkin
, that a hearing officer cannot abuse his discretion by denying a right that a party has failed to exercise.  Accordingly, we find that plaintiff’s claims as to denial of due process and abuse of discretion are unfounded.

Plaintiff next contends that he was denied a fair hearing when the ALJ found the City inspector’s report inherently more credible than his own testimony and accepted the facts alleged in the notice of violation as 
prima facie 
evidence of a violation.  Plaintiff argues that, because the record contains no evidence indicating that the inspector’s statement was more credible or entitled to be given more weight than his own testimony, the ALJ’s judgment was erroneous.  He cites to 
People v. Averhart
, 311 Ill. App. 3d 492 (1999), and 
People v. Ford
, 113 Ill. App. 3d 659 (1983), for the proposition that the testimony of witnesses who happen to be government officials is not entitled to more weight than the testimony of any other witness.

In response, defendants contend that plaintiff’s testimony at the hearing did not contradict the inspector’s statement and did not establish that the Building complied with Code section 13-196-530(b), and therefore that plaintiff’s complaint that the ALJ entitled the City’s evidence to more weight than his own is baseless.  Defendants also argue that plaintiff acknowledges that a notice of violation serves as 
prima facie 
evidence of the existence of the facts alleged therein, specifically a violation of section 13-196-530(b), and that plaintiff’s testimony did nothing to dispute those facts.

As to this issue, we can only assess the differences in the evidence presented at the hearing as differences of degree, not substance.  Plaintiff stated to the ALJ that he observed and measured the openings in the Building’s mortar and the displacement of the bricks, all but admitting to a Code violation.  His only argument was that the openings and brick displacements were not substantial enough to constitute a violation of section 13-196-530(b); he presented no evidence contradicting or refuting the inspector’s assessment that they indeed existed.

While a trier of fact is to evaluate a government official’s testimony as that of any other witness and not presume that such testimony is inherently more credible than that of any other witness (see 
Crook v. Crook
, 329 Ill. App. 588 (1946); 
Ford
, 113 Ill. App. 3d 659), it does not appear to have been the case in this instance.  As stated above, the only real differences in the evidence presented were variances in degree of the alleged defects in the Building’s wall; there was no evidence contradicting or refuting their actual existence.  With this in mind, the ALJ appeared to have come to the only logical conclusion,
 i.e.
, that the alleged conditions of the Building constituted a violation of section 13-196-530(b).  When evidence from opposing parties points to the same conclusion, one can hardly argue that the trier of fact favored one party’s evidence over that of the other.  Therefore, we agree with defendants that the ALJ did not find that the City’s evidence was inherently more credible than plaintiff’s and thus was not in error.

Plaintiff next contends that the Building Code provision that he was found to have violated is unconstitutional because it is vague on its face.  Section 13-196-530(b) provides as follows:

"Every exterior wall shall be free of holes, breaks, loose or rotting boards or timbers, and any other conditions which might admit rain, or dampness to the interior portions of the walls or to the exterior spaces of the dwelling.”  Chicago Municipal Code ྷ 13-196-530(b) (1990).

Plaintiff argues that the phrase "might admit rain, or dampness” is vague in that it does not provide adequate notice to building owners as what specific condition constitutes a violation of the provision.  He asserts that the term "might” is entirely subjective and requires guesswork as to the condition an owner is required to maintain as to a building’s exterior walls.  He further argues that such a subjective term grants City inspectors the exclusive power and authority to determine what conditions violate the provision and leaves inspectors too much discretion to assess violations essentially as matters of opinion.

Plaintiff relies on 
City of Chicago v. Morales
, 177 Ill. 2d 440 (1997), where the Illinois Supreme Court held that an ordinance is enforceable only if its language is sufficiently definite to give a person a reasonable opportunity to distinguish between lawful and unlawful conduct and to adequately define the offense so that it does not encourage arbitrary and discriminatory enforcement.  Plaintiff also relies on 
Pacesetter Homes, Inc. v. Village of Olympia Fields
, 104 Ill. App. 2d 218 (1968), in which this court invalidated an Olympia Fields ordinance that conferred too much discretion on the village’s commissioner and advisory committee in accepting or rejecting building permits and otherwise failed to prescribe specific standards by which village officials were to assess permit applications.  Plaintiff asserts that the Building Code provision is similarly vague in that it does not specifically state any conditions that "might” allow rain or dampness to infiltrate a building’s interior areas.

Defendants respond that the provision is not vague and that assessing whether a building’s exterior is susceptible to water infiltration is an objective process in that a wall either has holes or openings that might admit moisture or it does not.  Defendants argue that the Building Code is definite enough to serve as a guide to building owners, relying on 
East St. Louis Federation of Teachers Local 1220 v. East St. Louis District No. 189 Financial Oversight Panel
, 178 Ill. 2d 399 (1997), and that any doubts regarding its construction should be resolved in favor of its validity.  

Defendants maintain that the provision is clear enough to provide building owners with notice as to their obligation to keep exterior walls in a condition that is not susceptible to water infiltration.  They also point out that plaintiff all but admitted that the Building had portions of washed out mortar and that any owner would recognize that washed out mortar is not a sound condition and is likely to admit water to a dwelling’s interior.  Defendants insist that the provision is clear on its face, especially as it applies to plaintiff.

Defendants make grudging note of our decision in 
City of Chicago v. RN Realty, L.P.
, 357 Ill. App. 3d 337 (2005), and assert that the majority in that case misinterpreted section 13-196-530(b) as requiring the City to prove actual water infiltration in order to sustain a finding of liability, as the dissent also asserted.  With all due respect, 
RN Realty
 propagated no such rule.

In 
RN Realty
, the City and the defendants each presented expert witnesses of equal qualifications and equal credibility as to alleged violations of section 13-196-530(b).  The City’s inspector testified that he observed open joints between tiles on the building’s exterior that constituted violations, while the defendant presented engineering and maintenance reports stating that the openings had been sealed prior to the date of the alleged violation and that the exterior was indeed up to Code.  The trial court found the evidence conflicting and ruled in favor of the defendant.  We affirmed, noting that we were in no position to overrule the trial court as to the sufficiency of the evidence.  
RN Realty
, 357 Ill. App. at 346.  The holding was purely an evidentiary one, not one dealing with statutory interpretation.

Here, as has been noted repeatedly, the opposing parties’ evidence all but proposed the same conclusion, that the Building’s exterior had loose bricks and open mortar joints.  Plaintiff only presented evidence as to their extent, not as to their nonexistence; the defendants’ evidence in 
RN Realty
 directly contradicted the City’s assertions, and we concluded that the trial court’s finding in their favor was not against the manifest weight of the evidence.  
RN Reality
, 357 Ill. App. 3d at 346.

As for plaintiff’s contention of vagueness, we find it lacking.  On its face, section 13-196-530(b) is clear in its prohibition against "holes, breaks, loose or rotting boards or timbers, and any other conditions which might admit rain, or dampness.”  Chicago Municipal Code ྷ 13-196-530(b) (1990).  It ought to be clear to any observer that conditions such as loose brick, open mortar joints, or any other obvious openings are liable to admit rain or dampness into a building’s interior, especially when such conditions are discernible by an inspector’s naked eye. A visible opening in a building’s exterior always has the potential to admit dampness or moisture to its interior.  An opening that "might” admit water is in violation of the Code, whether it actually does so or not.  Accordingly, the provision is not so vague as to deprive citizens of the opportunity to distinguish between compliance and noncompliance or as to allow potentially arbitrary or discriminatory enforcement.

Plaintiff next contends that the ALJ’s decision was against the manifest weight of the evidence because the inspector’s description of the allegedly violative conditions was "cryptic” and did not provide an adequate basis for a finding of liability.  He argues that the inspector’s terse observations of "wash out mortar” and "loose brick” provide no evidence as to the nature or extent of the Building’s alleged defects, such as the number, location, and degree of the observed mortar gaps and loose bricks, and how those factors rendered the Building’s wall not "substantially watertight.”  Plaintiff further argues that his own testimony as to the extent of the mortar gaps was uncontroverted and not inherently improbable, but was nonetheless disregarded by the ALJ, rendering his decision unsupported and against the manifest weight of the evidence.

Defendants respond that plaintiff essentially agreed that portions of the wall’s mortar were washed out and had loose bricks, that the only dispute was one over degree and whether the extent of the alleged defects was such that they might admit rain or dampness into the Building’s interior, and that the record therefore amply supports the ALJ’s finding of liability.

We believe that our previous analysis as to the sufficiency of the evidence to sustain the ALJ’s finding of liability renders this contention moot, and we therefore decline to consider it.

Plaintiff lastly contends that the ALJ acted unreasonably in assessing the maximum daily fine because he provided no basis for instituting the maximum amount, rendering it arbitrary and unreasonable.  Plaintiff argues that there was evidence of compliance with Building Code, as provided through his own testimony, and that there were no aggravating circumstances, such as prior violations or imminent risks to health and safety, that would justify the maximum possible fine.  He cites no legal authority in support.

Defendants counter that the fine was not arbitrary or unreasonable in light of the fact that the ALJ allowed plaintiff an opportunity to repair the allegedly defective conditions but plaintiff chose not to do so.  Defendants also argue that this issue has been waived because plaintiff failed to raise it both during the administrative hearing and on review to the circuit court.  Defendants further point out that the fine could have been much greater in that the ALJ only imposed a single-day fine when he could have imposed a fine for each day the Building was in disrepair between March 12 and June 18, 2004.  Defendants maintain that the fine is not excessive and is closely related to the purpose of the statute pursuant to which it was imposed, in accordance with 
Morris v. Department of Professional Regulation
, 356 Ill. App. 3d 83 (2005), that the violation for which plaintiff was found liable was a serious one that could lead to dangerous structural problems, and that the City’s ability to levy meaningful fines is essential to the Building Code’s stated purpose of protecting and promoting public health and safety.

Regarding penalties for violations of the Building Code, the Municipal Code reads as follows:

"Any violation of, or resistance to or interference with the enforcement of, any of the provisions of this code enumerated in Section 13-12-010, to which no other penalty provision is applicable shall be punished by a fine not less than $200.00 and not more than $500.00, and each day such violation shall continue shall constitute a separate and distinct offense for which a fine as herein provided shall be imposed.”  Chicago Municipal Code ྷ 13-12-040 (2005).  

We agree with defendants. As stated previously, the evidence in this case all pointed to the only logical conclusion,
 i.e.
, that a violation of the Building Code existed, and the only real argument was as to its extent.  The ALJ imposed a maximum daily fine, but for only a single day’s occurrence, and did allow plaintiff, albeit indirectly, an opportunity to bring the Building into compliance or at least mitigate his liability by setting a reinspection date and continuing the proceedings over a period of several weeks.  The fine assessed did not exceed statutory guidelines and indeed could have been assessed for each day that the Building’s wall was in disrepair.  Based on these circumstances, we conclude that the ALJ’s decision was not arbitrary or unreasonable.

For the reasons set forth above, we affirm the judgment of the circuit court.

QUINN, P.J., and MURPHY, J., concur.